UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IAN WRIGHT,<br>         Plaintiff,<br><br>         v.<br><br>ANGEL QUIROS, et al.,<br>         Defendants. | No. 3:23-cv-949 (SRU) |

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

The plaintiff, Ian Wright ("Wright"), a *pro se* prisoner[1] in the custody of the Connecticut Department of Correction ("DOC"), brings this complpaint under 42 U.S.C. § 1983. *See* Sec. Am. Compl., Doc. No. 12. He names as defendants four DOC supervisory officials: Commissioner Quiros, Osborn Correctional Institution ("Osborn") Warden Guadarrama, Osborn Food Service Supervisor Wilcox, and District Administrator Rodriguez.[2] *Id*. He claims that the defendants violated his rights under the Eighth Amendment to the United States Constitution and negligently inflicted emotional distress on him in violation of Connecticut state law. Wright damages and a declaratory judgment. *Id.*

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a

---

[1] I may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Connecticut DOC website reflects that Plaintiff was sentenced on March 22, 2002, to a term of incarceration that has not yet expired. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=286236.

[2] Plaintiff refers to a District Administrator Rodrequez. But I construe that defendant to be District Administrator Nick Rodriguez based on the information on the Connecticut DOC website. *See https://portal.ct.gov/DOC/Org/Operations-North-District-Administrator; https://portal.ct.gov/DOC/Org/Operations-South-District-Administrator.*

1

governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

I have thoroughly reviewed all factual allegations in the second amended complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. §1915A.

## I.    FACTUAL ALLEGATIONS

Wright's complaint describes inadequate measures to safeguard the prison population from COVID-19 while he was housed at Corrigan-Radgowski Correctional Center ("Corrigan") and Osborn Correctional Institution. Sec. Am. Compl., Doc. No. 12, at ¶¶ -76.

In the first two counts of his amended complaint, which assert Eighth Amendment violations, Wright claims that Commissioner Quiros, Warden Guadarrama, District Administrator Rodriguez and Osborn Food Supervisor Wilcox implemented practices that exposed him to unsafe and unconstitutional conditions of confinement at Osborn. *Id.* at ¶¶ 77-84 (count one), ¶¶ 85-90 (count two). Wright alleges that the defendants exacerbated the risk of his COVID-19 infection at Osborn by failing to institute reasonable safety measures, including social distancing of inmates seated at tables during meals. *Id.* at ¶ 23, 52.

In November 2021, a memo from Deputy Commissioner Mulligan posted at Osborn provided notice of an increased positivity rate within the DOC prison community. *Id.* at ¶ 52. In addition, another memo posted at Osborn in 2021 directed inmates to implement mask wearing measures to mitigate Osborn's increased COVID-19 positivity. *Id.* at ¶ 53.

At the Osborn clothing factory, inmate workers—including Wright—were provided with

2

plastic separators between each seat at the table during lunch. *Id.* at ¶ 55. By contrast, at the Osborn dining hall, Wright was forced to sit with four other inmates at a table with no social distancing measures. *Id.* at ¶ 57. Both Warden Guadarrama and Osborn Food Service Supervisor Wilcox observed the inmates eating meals in the Osborn dining room. *Id.*

Wright sent an inmate request to Wilcox about the substantial risk of harm posed by having inmates sit four persons to a table without any reasonable means for social distancing. *Id.* at ¶ 58. Wilcox responded that he had "no control over this." *Id.*

Warden Guadarrama denied Wright's Level 1 Grievance about the lack of social distancing measures during meals at the Osborn dining room. *Id.* at ¶ 59. And District Administrator Rodriguez denied Wright's Level 2 Grievance appeal from that denial. *Id.* Wright also spoke directly to Warden Guadarrama about the unsafe conditions of meals served in the Osborn dining room. *Id.* at ¶ 60. Warden Guadarrama responded that he would not close the dining hall or provide inmates with feed-back trays in their units. *Id.* at ¶ 61.

Wright later sent Commissioner Quiros a letter about the risk of COVID-19 transmission posed by conditions during meals in the Osborn dining hall. *Id.* at ¶ 61. Specifically, Wright explained that Osborn inmates were forced to sit four persons to a table with no reasonable means of social distancing to prevent COVID-19 transmission. *Id.* at ¶ 62. Warden Guadarrama issued a response to that letter, in which he represented that Osborn dining hall seating was marked to comply with social distancing. *Id.* Wright acknowledges that some of the dining hall seats were painted white, but he claims that there was no direction about how the seats should be used for effective social distancing. *Id.* at ¶ 63.

Wright's Freedom of Information Act ("FOIA") request for all social distancing policies

or memos regarding inmate dining hall seating at Osborn returned no responsive documents. *Id.* Wright later spoke to Warden Guadarrama again about the lack of direction for social distancing guidance during meals in the Osborn dining hall. *Id.* at ¶ 64. But Warden Guadarrama took no action to remedy the situation. *Id.*

Warden Guadarrama and Food Service Supervisor Wilcox also refused to provide Wright with feed-back food trays. *Id.* at ¶ 65. Thus, due to the unsafe conditions of the Osborn dining hall during meals, Wright stopped taking meals in the dining hall and ate junk food purchased at the commissary. *Id.* at ¶ 65. Wright informed Wilcox that he was not entering the dining hall due to his fear of COVID-19 transmission. *Id.* at ¶ 66.

After he started to feel unwell and malnourished, Wright had to return to the dining hall so that he could eat nutritional food. *Id.* at ¶ 67. Wright sat at a table with three other inmates, one of whom sneezed and coughed uncontrollably. *Id.* Thereafter, Wright experienced COVID-19 symptoms, tested positive for COVID-19, and was moved to the quarantine unit. *Id.* at ¶ 68.

While in the quarantine unit and again after his release from quarantine, Wright spoke to Warden Guadarrama about the unreasonable risk of harm posed by forcing inmates to sit four to a table during meals, and the need for policies or direction about how to social distance inmates during meals. *Id.* at ¶ 69-70. Guadarrama stated that he would be working with prison officials to resolve the dining hall arrangements. *Id.* However, Wright was still forced to sit with three other inmates at the dining hall tables during meals. *Id.* at ¶ 70.

Wright later sent an inmate request to Food Service Supervisor Wilcox about his conversation with Warden Guadarrama concerning the necessity for policies and instructions regarding the seating arrangements in the dining hall. *Id.* at ¶ 71. Wilcox responded: "This has

been addressed." *Id.*

## II. DISCUSSION

Wright seeks both monetary damages and a declaratory that the defendants violated his constitutional rights. I will first consider whether Wright has alleged a plausible section 1983 claims for damages, and then turn to his state law claim.

Preliminarily, I observe that a plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). This is true with respect to supervisory officials as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability.").

### A. Eighth Amendment

In order to establish a violation of his Eighth Amendment rights for failure to protect his health or safety, Wright must allege (1) that he was incarcerated under "conditions posing a substantial risk of serious harm" and (2) the prison official putting him in those conditions was deliberately indifferent to his health or safety. *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020). In order to meet this second prong, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Thus, I must determine whether Wright has sufficiently alleged facts showing

that each defendant acted with deliberate indifference, *i.e.*, that he "personally knew and disregarded an excessive risk to [Wright's] health or safety." *Tangreti*, 983 F.3d at 619.

Wright asserts two counts of Eighth Amendment violation that both arise from the defendants' failure to take reasonable preventative measures to mitigate transmission of COVID-19 during meals at Osborn. Am. Compl., Doc. No. 12, at ¶¶ 77-90. Specifically, he complains that the defendants' failure to institute social distancing at tables during meals in the Osborn dining room or to provide him with a feed-back tray for meals within his housing unit exposed him to the risk of contracting the COVID virus and deprived him of "safe and sanitary" meals. *See id.* at ¶¶ 79-83; 87-90.

"[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). Whether a particular danger poses a substantial risk of serious harm in a prison must be evaluated in light of the steps that the facility has already taken to mitigate the danger. *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (considering facility's smoking policy and changes to the prisoner's confinement in assessing risk of harm). For purposes of initial review, the Court assumes that the contagious respiratory illnesses such as COVID-19 present a substantial risk of serious harm to Wright's health.

With respect to the subjective element of the deliberate indifference standard, a conclusory allegation that a defendant or defendants created a policy or custom under which unconstitutional practices occurred is insufficient to state an Eighth Amendment claim. *See Jusino v. Quiros*, No. 3:21-cv-620 (SRU), 2021 WL 5111908, at *8 (D. Conn. Nov. 3, 2021). But a plaintiff may be able to establish an Eighth Amendment violation where a prison official allegedly "promulgated an unconstitutional policy with a culpable mental state—in this

6

case, deliberate indifference." *Brunache v. Annucci*, 2023 WL 146850, at *12 (W.D.N.Y. Jan. 9, 2023) (quoting *Stone #1 v. Annucci*, 2021 WL 4463033, at *6-*8 (S.D.N.Y. Sept. 28, 2021)).

Here, Wright's allegations raise an inference that the supervisory officials—Commissioner Quiros, Warden Guadarrama, Food Service Supervisor Wilcox and District Administrator Rodriguez—were all aware of the dangers presented by the COVID virus within the prison and the need to take preventative measures. *See* Am. Compl., Doc. No. 12, at ¶¶ 52-53. Of significance to the plausibility of his claims, Wright has alleged facts to suggest that Warden Guadarrama, District Administrator Rodriguez, and Food Service Supervisor Wilcox were well aware of his concerns about his risk of COVID exposure during meals but failed to institute effective measures to mitigate transmission of the virus during meals in the dining room. In addition, Wright alleges that Warden Guadarrama and Food Service Supervisor Wilcox denied his request to have a feed-back tray for meals in his housing unit. At this stage of the litigation, and mindful of the Second Circuit's directive that *pro se* pleadings be liberally construed, I will permit Wright to proceed against Guadarrama, Rodriguez and Wilcox on his Eighth Amendment damages claims of deliberate indifference to his risk of contracting the COVID virus during meals at Osborn.

However, I must dismiss Wright's Eighth Amendment claims against Commissioner Quiros in his individual capacity.[3] Wright's allegation that he sent a letter to Commissioner

---

[3] Notably, though the three counts stated in Wright's complaint only mention the conditions of his confinement at Osborn, the factual section of Wright's complaint also contains numerous allegations of unsafe conditions at Corrigan. *See* Sec. Am. Compl., Doc No. 12, at ¶¶ 17-49. Liberally construing Wright's complaint, he appears to raise claims related to his treatment as an inmate at Corrigan. However, because I must dismiss Wright's claims against Commissioner Quiros, no remaining defendant has any involvement with Wright's treatment at Corrigan. Therefore, if Wright wishes to pursue any claims related to his conditions of confinement at Corrigan, he should file a new action and name as defendants Corrigan officials.

Quiros about his social distancing concerns is not sufficient to suggest Quiros's involvement in an Eighth Amendment violation, because Commissioner Quiros's mere receipt of the letter does not show personal involvement. *Lopez v. Chappius*, No. 6:17-CV-96395 EAW, 2021 WL 859384, at *2 (W.D.N.Y. Mar. 8, 2021) ("Even before *Tangreti*, it was well-established that a supervisor's failure to respond to a letter of complaint does not provide a sufficient basis to find the defendant was personally involved in the deprivation alleged.") (quotations omitted); *Tangreti*, 983 F.3d at 616–17 ("[a] supervisor's 'mere knowledge ...' is not sufficient because that knowledge does not amount[ ] to the supervisor's violating the Constitution.").

### 2. Official Capacity Claims

In addition to his claims for damages against the defendants in their individual capacities, Wright asserts his claims against the defendants in their official capacities and seeks declaratory relief. To the extent he seeks money damages against the defendants, who are state employees, in their official capacities, such claims are dismissed as barred by the Eleventh Amendment. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

In *Ex parte Young*, the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. 209 U.S. 123, 155–56 (1908). *See also In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) ("A plaintiff may sue a state official acting in his official capacity— notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law.")

But Wright's request for a declaratory judgment that Defendants violated his constitutional rights is barred because the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993); *see also Green v. Mansour*, 474 U.S. 64, 71 (1985). In addition, it is not clear that Wright remains at serious risk of harm from transmission of the COVID virus in light of vaccinations that have substantially diminished the rate of infection and risks associated with the COVID-19 illness. *United States v. Amuso*, No. 90-CR-00446, 2023 WL 5153425, at *3 (E.D.N.Y. Aug. 10, 2023) (noting the pandemic's abatement and the lessened need for restrictions to prevent spread of disease); *United States v. Folkes*, No. 18-CR-257 (KAM), 2022 WL 1469387, at *6 (E.D.N.Y. May 10, 2022) (citing Center for Disease Control statement that "'[w]ith high levels of population immunity from vaccines or prior infection, breakthrough cases and reinfections more frequently result in asymptomatic infections or milder illness in most persons.'"); *Harper v. Cuomo*, 2021 WL 1821362, at *7 (N.D.N.Y. Mar. 1, 2021) (citations omitted) (concluding that inmates had not demonstrated substantial risk of serious harm given the measures that prison officials have instituted to address COVID-19 and the low COVID-19 positivity rate that those measures have attained at Adirondack*."), report and recommendation adopted*, 2021 WL 1540483 (N.D.N.Y. Apr. 20, 2021).[4] Accordingly, Wright has not stated a plausible

---

[4] Both the State of Connecticut and the federal government issued declarations of the end of the COVID-19 Public Health Emergency on May 11, 2023. *See* https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=What%20You%20Need%20to%20Know,share%20certain%20data%20will%20change; https://portal.ct.gov/Office-of-the-Governor/News/Press-Releases/2023/05-2023/Governor-Lamont-Announces-COVID-19-Public-Health-Emergency-Declaration-Will-End-on-May-11#:~:text=(HARTFORD%2C%20CT)%20%E2%80%93%20Governor,directed%20the%20related%20federal%20public.

claim for prospective relief, and his request for declaratory relief against the defendants in their official capacities is dismissed.

### B.     State Law Claim of Negligent Infliction of Emotional Distress

Connecticut General Statutes section 4-165 bars negligence claims against state employees acting within the scope of their employment. *See* Conn. Gen. Stat. § 4-165(a) ("No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."); *see also Miller v. Egan*, 265 Conn. 301, 319 (2003) (state employees are not "personally liable for their negligent actions performed within the scope of their employment"). Defendants are all state employees who were acting within the scope of their employment. Thus, they are generally immune to state negligence tort claims, including negligent infliction of emotional distress. *Sheppard v. Roberts*, No. 3:20-CV-00875 (VAB), 2021 WL 3023090, at *2 (D. Conn. July 16, 2021) (dismissing negligence claims including negligent infliction of emotional distress).

However, because Wright has pleaded plausible Eighth Amendment deliberate indifference claims that suggest that the defendants acted recklessly, I will permit Wright to assert claims under state law asserting that he was harmed as a result of the defendants' recklessness. *See Miller*, 265 Conn. at 319 ( "State employees do not, however, have statutory immunity for wanton, reckless or malicious actions. . . ."). Accordingly, Wright may proceed on his state law claims of recklessness against Guadarrama, Rodriguez and Wilcox.

### ORDERS

For the foregoing reasons, I enter the following orders:

(1) The case shall proceed on Wright's Eighth Amendment claims against Warden Guadarrama, District Administrator Rodriguez, and Food Service Supervisor Wilcox in their individual capacities; and on his state law negligent infliction of emotional distress claims against Warden Guadarrama, District Administrator Rodriguez, and Food Service Supervisor Wilcox in their individual capacities. All other claims, including official capacity claims, are DISMISSED without prejudice under 28 U.S.C. § 1915A. I instruct the clerk to terminate Commissioner Quiros from this action.

(2) The clerk shall verify the current work addresses for Warden Guadarrama, District Administrator Rodriguez, and Food Service Supervisor Wilcox with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The clerk shall mail a courtesy copy of complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5) Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also

11

include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Wright changes his address at any time during the litigation of this case, Local Court Rule 83.1(c) provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Wright must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter or pleading without indicating that it is a new address. If Wright has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

So ordered.

Dated at Bridgeport, Connecticut, this 29th day of January 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge